**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GABINO GENAO,

                          Plaintiff,

       -against-

CITY OF NEW YORK, *et al.*,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                      <u>MEMORANDUM DECISION</u>
                          <u>AND ORDER</u>

                      20 Civ. 10563 (GBD) (VF)

**GEORGE B. DANIELS, United States District Judge:**

*Pro se* plaintiff Gabino Genao brings claims under 42 U.S.C. § 1983 for violations of his constitutional rights while he was a pretrial detainee at the Otis Bantum Correctional Facility. (Am. Compl., ECF No. 45 at 11–13.) The facility is operated by the New York City Department of Corrections. (*Id.* at 2.)

Genao's amended complaint alleged numerous constitutional violations against the City of New York and several correctional officers, most of which were subsequently dismissed. *See Genao v. Rivera*, No. 20 Civ. 10563 (GBD) (VF), 2024 WL 4307526, at *1 (S.D.N.Y. Sept. 26, 2024). The only remaining defendants are Warden Glemaud, Captain Heeralal, Captain Hyppolite, and the City of New York.

Before this Court is Magistrate Judge Figueredo's January 20, 2026, Report and Recommendation (the "Report"), recommending that this Court grant Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and dismiss the remaining counts. (R & R, ECF No. 135, at 7–8.) No objections were made to the Report. Having reviewed the Report for clear error and finding none, this Court ADOPTS the Report in its entirety.

## I.    BACKGROUND[1]

On March 16, 2019, Genao was a pre-trial detainee at the Otis Bantum Correctional Facility. (Defs.' 56.1 Statement, ECF No. 120 ¶ 1; ECF No. 127 at 4.) Beginning at or about 9:15 p.m., Genao and several other inmates in the dayroom of the housing unit repeatedly refused to comply with orders to return to their cells. (ECF No. 131 ¶ 1; ECF No. 120 ¶¶ 2-3.) For the next twenty-five minutes, Genao and the other inmates climbed railings, kicked windows, threw objects, made threats, and yelled profanities at corrections officers. (ECF No. 120 ¶ 3; ECF No. 119-2 at 0:02:20 to 0:09:43.) Genao told officers that the inmates wanted to be taken to intake. (ECF No 127 at 4.) Captain Hyppolite instructed the inmates to return to their cells, but the inmates instead got on their knees and placed their hands behind their backs. (ECF No. 127 at 5; ECF No. 131 ¶ 10; ECF No. 119-2 at 0:13:20.) Corrections officers warned the inmates multiple times that chemical agents may be used on them if they did not return to their cells. (ECF No. 120 ¶ 4; ECF No. 119-2 at 0:16:04 to 0:16:10.) A corrections officer then proceeded to deploy pepper spray in the inmate's direction. (ECF No. 120 ¶ 5.) Immediately after this, Inmate Genao charged a different officer, taking him to the ground and punching him several times. (*Id.* ¶ 7.) In response to Genao's physical altercation with the officer, Captain Heeralal deployed pepper spray at Genao. (*Id.* ¶ 8.)

After the officers restrained Genao, they decontaminated him in the early hours of March 17, 2019, at around 12:30 a.m., approximately four hours after being pepper sprayed. (ECF No. 120 ¶ 13; ECF No. 131 at ¶ 22.) Warden Glemaud then escorted Genao to the medical clinic and told him, "you're not going to jack [report] any injuries" and "the doctor already knows you [are] not going to jack [report]" injuries. (ECF No. 133-1 at 48–49; ECF No. 133-1 at 50.) Glemaud

---

[1] The relevant factual and procedural background is set forth in greater detail in the Report, (ECF No. 135,) and is incorporated by reference herein.

was present during Genao's medical examination by a doctor at the correctional facility's medical center. (ECF No. 133-1 at 53–54.) The doctor's medical report following Genao's examination stated that Genao "denied any injury after DOC use of force…[n]o chest pain, no abdominal pain. He refused vital signs and physical examination, no visible injury noted." (ECF No. 119-4 at 1.)

Genao filed his original complaint on December 14, 2020. (ECF No. 2.) On March 20, 2023, Genao filed an amended complaint, which dropped claims against two defendants and asserted claims against five new defendants (the "New Defendants"). (*See* Am. Compl.) The New Defendants, except Heeralal, moved to dismiss the claims against them on November 21, 2023, (*See* ECF No. 68.) On July 12, 2024, Magistrate Judge Figueredo issued a Report, recommending that this Court grant the motion and dismiss the claims against the New Defendants as time barred. (*See* ECF No. 92.) On September 26, 2024, this Court adopted the Report, dismissed all claims against the New Defendants, and dismissed, *sua sponte*, Plaintiff's Fourteenth Amendment spoliation claim as invalidly pled. *See Genao*, 2024 WL 4307526, at *1.

On July 7, 2025, the Defendants filed a motion for summary judgment seeking to dismiss the remaining claims. (ECF No. 118.) Magistrate Judge Figueredo issued her Report and Recommendation to dismiss all claims on January 20, 2026. As noted above, neither party has filed objections to the Report.

## II.    LEGAL STANDARDS

### A. Reports and Recommendations

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). When no party files objections to a report and recommendation, the court may adopt it if "there is no clear error on the face of the record." *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253

3

(S.D.N.Y. 2005) (citation omitted). Clear error is present only when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

**B. Summary Judgment**

Summary judgment is proper, as a matter of law, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On a summary judgment motion the trial court's task "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d. Cir. 1994). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Id.*

The Second Circuit has instructed courts considering motions for summary judgment to afford *pro se* litigants "special solicitude," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988), to construe "the submissions of a *pro se* litigant . . . liberally," and interpret their submissions "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted) (emphasis in original). "Nonetheless, proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Parker v. Fantasia*, 425 F.Supp.3d 171, 183 (S.D.N.Y. 2019) (italics added) (quoting *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014)).

### III.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS GRANTED

At the outset, this Court does not find any clear error in Magistrate Judge Figueredo's recommendation to dismiss all charges against Captain Heeralal as time barred. (*See* R&R at 7.) Genao first asserted claims against Heeralal over four years after his claims accrued, well past the applicable statute of limitations. (*Id.*) Accordingly, this Court dismisses Genao's claims against Heeralal as time barred.

This Court also adopts Magistrate Judge Figueredo's recommendation to dismiss Counts IV, VI, VII, and VIII against the City. As the Report notes, *Monell* liability against the City requires there "be an individual officer who is alleged to have engaged in the conduct that resulted in a constitutional violation." (R&R at 8 (citing *Dobryakov v. Vill. of Spring Valley Police Dep't*, No. 08-CV-4488 (WWE), 2011 WL 1080316, at *5 (S.D.N.Y. Mar. 21, 2011).) This Court previously dismissed the individual officers alleged to have engaged in the conduct underlying Counts IV, VI, VII, and VIII. *See Genao*, 2024 WL 4307526, at *4–*7. With no individual defendants attached to these claims, this Court also dismisses Genao's related *Monell* claims against the City.

This Court further adopts the Report's recommendation to dismiss Genao's remaining claims. This Court finds no clear error in Magistrate Judge Figueredo's conclusions that (1) the Defendants did not use excessive force in violation of Genao's Fourteenth Amendment rights; (2) the Defendants did not act with deliberate indifference in violation of Genao's Fourteenth Amendment rights; (3) Warden Glemaud did not violate Genao's First Amendment rights; and (4) the City is not liable under § 1983.

### A. Defendants Did Not Use Excessive Force

Genao bases his excessive force claim on the correctional officers' use of pepper spray during the March 16, 2019 incident. Because Captain Heeralal is dismissed from this case, Warden

Glemaud and Captain Hyppolite are the only remaining individual defendants. But as the Report highlights, Glemaud and Hyppolite never personally used pepper spray during the incident. (R&R at 17.) Therefore, to prove excessive force, Genao would need to show that Glemaud and Hyppolite failed to intervene. "An officer who fails to intercede is liable for the preventable harm caused by the actions of other officers where that officer observes or has reason to know . . . that excessive force is being used." *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id.*

Magistrate Judge Figueredo correctly concluded that Genao has not met this burden. Specifically, Genao did not show that the officers' uses of pepper spray were objectively unreasonable under the circumstances and, therefore, excessive. To prevail on a Fourteenth Amendment excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). To determine objective reasonableness, courts may consider several factors, including: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Richardson v. City of New York*, 21-cv-5080 (PAE) (KHP), 2022 WL 18959559, at *9 (S.D.N.Y. Nov. 14, 2022). Further, "[t]he use of pepper spray is not an actionable constitutional violation where there is no lasting injury, and where the subject was not cooperating with law enforcement." *Walton v. Lee*, No. 15-cv-3080 (PGG), 2019 WL 1437912 at *6 (S.D.N.Y. Mar. 29, 2019).

Here, the two instances in which officers used pepper spray were reasonable uses of force under the circumstances. In the first instance, the officers deployed pepper spray after Genao and the other inmates repeatedly refused to comply with orders to return to their cells and instead began kicking windows, yelling profanities, making threats, throwing items, and climbing railings. (ECF No. 120 ¶¶ 2–3.) The second use of pepper spray was in response to Genao charging at and punching a correctional officer. (*Id.* ¶¶ 7–8.) In both instances, officers used pepper spray in "a good faith effort to restore order" and to stop the situation from further escalating. *Vazquez v. Spear*, No. 12-cv-6883 (VB), 2014 WL 3887880, at *5 (S.D.N.Y. Aug. 5, 2014) (dismissing excessive force claim on summary judgment where defendants used pepper spray to force an uncooperative inmate's compliance). Accordingly, no reasonable jury could conclude that the use of force was objectively unreasonable.

As a result, even if Glemaud and Hyppolite had a realistic opportunity to prevent the other officers from using pepper spray, they had no obligation to do so because the underlying uses of force were reasonable under the circumstances. *See Savarese v. City of New York*, 547 F.Supp.3d 305, 353 (dismissing plaintiff's failure to intervene claim where there was "no evidence to support the allegation that his constitutional rights were violated"). Genao's excessive force claim against Glemaud and Hyppolite are dismissed.

## B. Defendants Did Not Act with Deliberate Indifference

Magistrate Judge Figueredo also did not err by recommending that this Court dismiss Genao's deliberate indifference claim. Genao alleges that Glemaud and Hyppolite were deliberately indifferent to his medical needs, by failing to consider his asthma before pepper spraying him, and the conditions of his confinement, by waiting to decontaminate him. To prove deliberate indifference under the Eighth Amendment, Genao must show (1) that the alleged

7

deprivation was objectively serious, *Spavone v. New York State Dept. of Correctional Services*, 719 F.3d 127, 138, and (2) the Defendants subjectively "'knew, or should have known' that [their] conduct 'posed an excessive risk to health or safety,'" *Fernandini v. United States*, No. 15-cv-3843 (GHW), 2017 WL 3208587, at *7 (S.D.N.Y. July 26, 2017) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 33 (2d Cir. 2017)).

There is no evidence to demonstrate that Hyppolite or Glemaud knew or should have known that the use of pepper spray or the failure to quickly decontaminate Genao after its use posed an excessive risk to Genao's health because of his asthma. (R&R at 25.) Critically, Genao failed to produce any medical directive that allegedly prohibited the use of chemical agents against him. (*See id.*) There are also no facts in the record suggesting that Hyppolite and Glemaud knew or should have known of Genao's sensitivity to chemical agents. (*Id.*). Without any evidence of subjective intent, Genao's deliberate indifference claim fails. Accordingly, this Court adopts the Report's recommendation and dismisses this claim.

## C. Defendant Glemaud Did Not Violate Plaintiff's First Amendment Rights

Genao claims that Defendant Glemaud threatened and intimidated him into not reporting any injuries after the incident, thereby violating his First Amendment rights. (ECF No. 45 at 11.) Magistrate Judge Figueredo determined that this claim should fail because the "record [did] not indicate that Genao suffered any actual harm." (R&R at 32.) To sustain a First Amendment retaliation claim, a plaintiff must demonstrate: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). In the prison context, "adverse action" is any "retaliatory conduct 'that would deter a similarly situated

8

individual of ordinary firmness from exercising…constitutional rights.'" *Id.* at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). With respect to the third element, when the alleged harm is that a plaintiff's speech was chilled, a plaintiff must show that his First Amendment rights were "actually chilled." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citation omitted).

This Court finds no clear error in Magistrate Judge Figueredo's recommendation. As explained in the Report, Genao does not claim that the pepper spray incident resulted in an injury or harm that would not be readily apparent from a visual medical examination. (R&R at 32.) In fact, the examining physician reported that Genao did not suffer any visible injuries from the incident. (ECF 119-4 at 1.) Further, Genao testified during his deposition that he did not seek any medical care in the month after the incident and admitted that he did not suffer any additional injuries outside of scrapes and bruises. (ECF 133-1 at 78–79.) Therefore, the undisputed medical records and Genao's own testimony undermine any claim of non-visible injury and suggest Genao had no injuries to report. (ECF No. 119-4 at 1; ECF No. 133-1 at 58, 78). Absent any indication that Glemaud's actions actually chilled Genao's speech, this Court adopts the Report's recommendation to dismiss these claims.

### D. The City of New York is Not Liable Under § 1983

Finally, Genao asserts a claim for municipal liability under § 1983 against the City of New York. To prevail on a § 1983 claim against a municipality for acts committed by a public official, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)). The fifth "official policy" element can only be met where a plaintiff proves that a "municipal policy of some nature caused a

9

constitutional tort." *Id.* (quoting *Monell*, 436 U.S. at 691). A municipality cannot be liable under § 1983 "simply because one of its employees committed a tort." *Id.* Instead, a plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Since all of Genao's claims against Glemaud and Hyppolite fail, there is no individual officer conduct that would serve as a basis for municipal liability. (*See* R&R at 33.) This is fatal to Genao's separate *Monell* claim against the City of New York. *See King v. City of New York*, 581 F. Supp. 3d 559, 577 (S.D.N.Y. 2022) ("Because King has failed to plausibly allege a denial of a constitutional right, his *Monell* claim cannot be sustained."). Accordingly, Magistrate Judge Figueredo's recommendation was not in clear error, and this Court dismisses this claim.

## IV.   CONCLUSION

Magistrate Judge Figueredo's Report is ADOPTED in full. Defendants' motion for summary judgment is GRANTED, and all remaining claims are dismissed. The Clerk of Court is directed to close the open motion at ECF No. 118 and the case.

Dated: March 16, 2026
      New York, New York

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

10